EBRAHIM OTMISHI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Otmishi v. Commissioner
Docket No. 12266-79.
United States Tax Court
T.C. Memo 1980-472; 1980 Tax Ct. Memo LEXIS 111; 41 T.C.M. (CCH) 237; T.C.M. (RIA) 80472; October 22, 1980, Filed Ebrahim Otmishi, pro se. Michael Neil Gendelman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *113 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined deficiencies in the petitioner's Federal income tax for the years 1976 and 1977 in the amounts of $858 and $566, respectively. The questions for decision are whether petitioner is entitled to: (1) A dependency exemption deduction for his daughter, Jeiran, for the year 1977, under section 152; (2) the right to file his income tax return as the head of a household, under section 2(b)(1), for the taxable year 1977; (3) an earned income tax credit for the taxable year 1977; (4) a deduction in the amount of $1,187, or in any amount, for the loss by theft of certain personal property, in 1976; and (5) claim deductions in the amounts of $2,994 and $3,858 in 1976 and 1977, respectively, for expenditures made in an attempt to regain actual custody of his *114 daughter, under section 165 as a loss by theft. FINDINGS OF FACT Petitioner filed timely Federal income tax returns for the years 1976 and 1977 as an "Unmarried Head of Household." At the time the petition herein was filed, he resided in Redwood City, California. Petitioner Ebrahim Otmishi and his former wife, Mina Tahmasebi (hereinafter referred to as Mina), had one child, Jeiran, who was born in October, 1971. A final divorce decree was entered by a California court on November 13, 1974. Under an agreement entered into between petitioner and Mina, custody of Jeiran was awarded jointly to them. The agreement also provided that Jeiran would reside with each parent for alternating three-month periods. When Jeiran was returned to petitioner for a three-month period, which was to begin in November, 1974, he noted a difference in Jeiran's behavior that suggested to him that she had been physically abused while she was in Mina's care. Therefore, at the expiration of the three-month period, petitioner notified Mina that he would not permit Jeiran to return with her to Boston. Mina, then, instituted a suit to gain sole custody of Jeiran. As a result of this suit, petitioner *115 was given sole custody of Jeiran, and Mina was granted reasonable rights of visitation for a specified two-month period each year. During one of these two-month periods, on or about August 17, 1976, Mina absconded with Jeiran. Since that time, petitioner's daughter has not lived with him, nor has he provided any support for her. Petitioner has spent at least the amounts of $2,994 and $3,858 in 1976 and 1977, respectively, in an attempt to regain actual custody of his daughter. Petitioner has paid these amounts for investigative trips to the east coast of the United States, for private investigators, for attorneys, and for secretarial services. Under California law, the taking of a child from its legal custodian is a felony. Based upon the complaint of petitioner, probable cause was found to believe that Mina had violated the California statute, and a warrant was issued for her arrest. Petitioner urges that Mina's taking of Jeiran in violation of the statute constituted a theft under California law. Therefore, he claims that the expenses that he has incurred in an attempt to locate and regain actual custody of her are deductible as expenses to recover a theft loss, under *116 section 165. On October 29, 1976, during one of petitioner's investigative trips, a motor vehicle that he was renting and its contents were stolen in Brooklyn, New York. On his 1976 tax return, petitioner claims a deduction in the amount of $1,187 resulting from this theft. In a schedule attached to his tax return, petitioner listed the following items as stolen: Suit and overcoat
$ 160
Shoes
14
Briefcase and paperrs
95
Investigative equipment
518
Cash
500
$1,287
At the trial, petitioner claimed that the amount of cash stolen was $350. A verification of the police report furnished by the Brooklyn Police Department lists, besides the automobile, only the following as stolen: cash in the amount of $120, clothing of no stated value, a wallet with credit cards, a passport, and a briefcase. The amounts shown on petitioner's tax return as the value of the investigative equipment, shoes, and overcoat represent their approximate purchase price two months before they were stolen. The wallet, with credit cards, and the passport were returned to petitioner several months after the theft. On his 1977 tax return, petitioner claimed a dependency exemption *117 deduction for Jeiran, head of household filing status, and an earned income credit. OPINION Section 152(e) provides a special test with respect to the support of children of divorced parents. Subsection (1) of section 152(e) provides that a child shall be treated as receiving more than half of his support from the parent having custody for a greater part of the year, if he receives more than half of his support from one or both of his parents and is in the custody of his parents for over half the year, unless one of the special rules in section 152(e)(2) applies. Both of the special rules in section 152(e)(2) provide that the parent not having custody shall be treated as furnishing over half the support of the child if such parent has provided at least a specified amount for support, and if certain other conditions exist. Petitioner contends that he is entitled to the dependency exemption, in 1977, based on subsection (1) of section 152(e), because he had legal custody of his daughter. The Court has previously recognized *118 the reference in section 152(e)(1) to the parent having custody as meaning the parent with actual care and control of the child. Dumke v. Commissioner,T.C. Memo. 1975-91, affd. in an unpublished opinion (5th Cir. Dec. 4, 1975). Since petitioner's daughter did not live with him and he did not furnish any support for her during the year 1977, he is not entitled to a dependency exemption for her under section 152(e)(1). Since petitioner did not provide any money for his daughter's support, in 1977, he also cannot qualify for the dependency deduction under either of the special rules in section 152(e) for that year. An individual is treated as the head of a household only if he is unmarried and maintains, as his home, a household which is also the principal place of abode of certain designated individuals who are dependents, including a daughter. Sec. 2(b)(1). We find that, in 1977, petitioner is not entitled to use the tax rate applicable to a head of household because he did not maintain as his home a household that was also his daughter's principal place of abode and *119 because he also was not entitled to a dependency exemption for her. Petitioner is not eligible for the earned income credit in 1977 because he did not maintain a household that was the principal place of abode of himself and a dependent child. Sec. 43(c)(1). Taxpayers have been held not to be entitled to portions of theft loss deductions because of discrepancies between the items claimed on their tax returns and those shown on police reports. However, we are convinced by petitioner's testimony that the police report, insofar as it pertains to petitioner's loss of articles other than money, is in error. We find that the police report correctly reported the amount of cash stolen as $120. The evidence was not clear as to the value and purchase prices of the investigative equipment, shoes, and overcoat. Applying the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we find that the fair market value of the property stolen from petitioner, other than cash, was $647. Accordingly, petitioner is entitled to a deduction for the loss by theft of articles from the car in the amount of $667, for 1976, after applying the $100 statutory floor. Petitioner *120 contends that he is entitled to a deduction, under section 165(c)(3), as a loss from theft, of the expense incurred in attempting to regain custody of his daughter. Section 165(c)(3) does allow a deduction for losses of property from theft. However, it has been held, in construing the predecessor of section 165(c)(3), that there must be an actual loss of property that belongs to or is owned by the taxpayer for the deduction to be allowed. Peyton v. Commissioner,10 B.T.A. 1129, 1130-1131 (1928). Also, to constitute property, the loss of which gives rise to a deduction under section 165, the article stolen must have an adjusted cost basis and a fair market value at the time of the theft. Only things subject to purchase and sale can have an adjusted cost basis and a fair market value. Thus, only such things can be considered to be property the loss of which is deductible under section 165. The ownership, purchase, and sale of human beings is commonly known as slavery. Since the adoption of the Thirteenth Amendment to the Constitution of the United States, in 1865, slavery *121 has been generally banned in the United States. Although petitioner may be entitled to his daughter's services and earnings under California law, he could neither own her nor sell her. In short, she is not petitioner's property. Therefore, in her abduction, petitioner did not suffer the actual loss of property owned by him, as is required by section 165(c)(3). In the Peyton case, supra, the Board stated: The section here in question was placed in the statute to take care of losses not connected with a trade or business and whether or not incurred in connection with transactions entered into for profit. It constitutes one of the rare instances where provision is made for the deduction of such a type of loss. If Congress had desired to extend the statute to cover a case such as the one at bar, it would have been an easy task so to do. We can not supply an omission so that the statute can be construed to fit the exigencies of this particular case. We, likewise, cannot extend the statute here to cover the expense incurred by petitioner in an attempt to recover the loss of his daughter. Accordingly, although the loss of petitioner's daughter is regrettable and he *122 has our sympathy, we have no choice except to hold that it is not a loss that entitles him to a deduction. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.